IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,                CR. NO. S-09-0387 GGH

    vs.                          <u>ORDER</u>

TRAVIS POPE,

        Defendant.

_____/

*Introduction and Summary*

        Defendant, Travis Pope, seeks to suppress evidence seized and statements made during an encounter in the El Dorado National Forest on August 16, 2009.  After review of the written submissions, and after review of the pertinent part of a video/audio recording of the August 16 events, the undersigned has determined that no evidentiary hearing is necessary, and to deny the motion.

*Facts*

        The facts are fairly straightforward.  Forest Law Enforcement Officer Marcus was dispatched to a site where a large gathering of people had been reported.  Although no conclusions about the purpose of the gathering need be made here, it appeared that the gathering was a "rave" party.  Reports of loud music and use of a public address system had been made.

1

Officer Marcus approached the gathering after exiting his patrol car.  No one else was on the scene with him, and the contact by Officer Marcus posed a potential risk of problems due to the fact that Officer Marcus was outnumbered by quite a bit, and of course, at this time he had no idea about with whom he was dealing.  He was authoritarian in his dealings with all the persons there, and immediately began to ask whether persons there were smoking marijuana.  He also quickly made it known that all of the equipment used for the party was going to be seized (no permit for the structures and equipment), and he needed to know who the owner(s) was.

The videotape revealed that Officer Marcus kept telling someone outside of the camera range to stay away – that was an order.  He had to direct this order to apparently the same person several times.  Finally, the tape reveals that he escorted a person by the name of Cranfill to the patrol car, and Cranfill was placed inside.  It was at this time that defendant Pope approached Officer Marcus and informed him that he (Pope) could not leave without Cranfill as Cranfill was his passenger and would be without a ride if Pope left.  Almost immediately, Marcus believed that Pope was under the influence of marijuana, and he asked Pope to admit that.  Pope obliged and admitted that he had been smoking marijuana.  Immediately thereafter, Marcus asked Pope if he had any marijuana "on him."  Pope denied this.  Pope was then ordered by Marcus to empty his pockets.  The videotape reveals that Pope was hesitant about complying, and although his hands were close to his pockets, no move was made to empty the pockets.  Undeterred, Officer Marcus asked him again, if he had any marijuana in his possession.  This time, Pope admitted that he did, and he was directed by Marcus to place the marijuana on the hood of the patrol car.  As defendant describes it (Brief at 4), Pope was ordered not to move away from the patrol car at this time.

No other facts are pertinent to this motion.

*Discussion*

Defendant does not take issue that Pope's appearance of intoxication and ready admission that he had been smoking marijuana constituted a valid investigatory stop.  Pope does

2

1   not contend that the mere asking of questions at the investigatory stop violated his rights.  See

2   investigatory stop cases cited in United States v. Aceves, Violation No. 1590816, 159, 0817

3   (E.D. Cal. 2010).  Pope does take issue with Marcus' first command to Pope to empty his

4   pockets, and asserts that the command was the equivalent of a search.

5          Given the fact that Officer Marcus was in the midst of an investigatory stop, and

6   given the fact that this incident was taking place in a remote area at which Officer Marcus was

7   greatly outnumbered, and given the fact that Pope was under the influence of an intoxicant,

8   Officer Marcus may well have been entitled to a Terry pat down search for weapons if he

9   reasonably suspicioned that Pope had weapons on his person.  See generally, United States v.

10  Hartz, 458 F.3d 1011 (9th Cir. 2006).  However, it is not at all clear from the facts presented thus

11  far by the parties that Officer Marcus had any suspicion or concern about weapons at the time he

12  ordered an "emptying of the pockets," and it would take an evidentiary hearing to sort that out.

13         Thus, the undersigned will assume that a weapons pat down, even if that could be

14  accomplished by a command to turn out one's pockets, did not take place.  The undersigned will

15  further accept the law set forth by defendant that an order to turn out one's  pockets with a

16  subsequent compliance with that order is a search encompassed by the Fourth Amendment.  See

17  the implicit assumption of such in United States v. Chatman, 573 F.2d 565 (9th Cir. 1977).

18  However, even with those assumptions, given the facts here, that does not help defendant.

19         All of the cases cited by defendant involved an executed search, that is, a

20  command was given, and an actual turning out of the pockets, or exposing the contents of a

21  backpack, or the like, took place after the command.  None of the cases involved facts where the

22  command to turn out the pockets was ignored or refused, and subsequent facts emerged justifying

23  a probable cause search at that time.  Defendant would have the undersigned believe that an

24  "almost search" could violate the Fourth Amendment.  But as with many things in life, "almost"

25  does not count.  The undersigned can find no authority that a desired unlawful search which does

26  not take place is subject to the exclusionary rule.

1        Here the facts indicate without legitimate dispute that the initial command to

2   empty pockets was not complied with.  Either because of his intoxicated slowness, an initial

3   determination not to comply, or an indecision about whether to comply, no action was taken by

4   Pope to empty the pockets on command.[1]  Defendant's argument that his hands were around his

5   pockets at this time does not mean that he had emptied his pockets.   It was not until Officer

6   Marcus had asked, a second time, whether Pope had marijuana in his possession, and Pope

7   admitted to such, did the *second* command to "place it on the hood," i.e., empty his pockets of

8   the marijuana and place it on the hood, along with Pope's actual compliance, constitute a

9   completed search.[2]

10       At the time when Pope made his admission, the *legal landscape had entirely*

11  *changed* justifying an arrest based on probable cause and a search in the context of an arrest.  At

12  hearing, defendant's counsel protested that no actual arrest of Pope took place which would then

13  justify a search incident to arrest.  This protest is defeated by Pope's own rendition of the facts

14  and cited case law.  As Pope conceded at the time after which Pope had placed his marijuana on

15  the hood of the car: "Officer Marcus ordered Mr. Pope not to move from the front of the patrol

16  vehicle at this time."  This was the time of  the quintessential "not free to leave" arrest.  Pope was

17  then cited for possession of marijuana, and he left.  And, one need go no further than Pope's cited

18  case of United States v. Chatman, supra, to understand that a search incident to arrest may

19  immediately precede the formal arrest.  "As long as probable cause to arrest exists before the

20  search, a search substantially contemporaneous with the arrest is incident thereto."  Id. 573 F.2d

21  _____

22      [1] Pope's argument that "he was in the process of complying" prior to his admission of
        marijuana possession does not square with the videotape.

23      [2] Pope might argue, although he has not, that the first potentially unlawful command to
24      empty pockets coerced him to later admit to possession of marijuana, and that therefore the
        admission was "fruit."  While it is conceivable there might be some not-complied-with-
        commands that are so coercive just by their utterance that they potentially could be found to have
25      compelled further action, the non-complied with directive to empty pockets here is not one of
        them.  To find otherwise would set adrift our Fourth Amendment jurisprudence from any
26      mooring in common sense.

                                        4

1    at 567.  See also Rawlings v. Kentucky, 448 U.S. 98, 110-111, 100 S.Ct. 2556, 2564 (1980).

2    *Conclusion*

3              Defendant Pope's Motion to Suppress is denied.  Trial is set for February 23,

4    2010, at 9:00 a.m., and trial confirmation for February 15, 2010 at 9:00 a.m.

5    DATED: 02/08/2010

                                    /s/ Gregory G. Hollows

6                           _____

7                                  UNITED STATES MAGISTRATE JUDGE

8    pope387.ord

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26